UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
U.S. UNDERWRITERS INS. CO.,                                        :
                                                                   :
                Plaintiff,                                     :
                                                                   :  **MEMORANDUM AND ORDER**
                -against-                                      :  12-CV-3062(DLI)(MDG)
                                                                   :
101-19 37th AVENUE LLC, UNITED FOUNDERS                            :
LTD., SAAL MANAGEMENT CORP., FEREYDOUN                             :
POURATIAN, JOSE MONTESDEOCA and SONIA                              :
MONTESDEOCA,                                                       :
                                                                   :
                Defendants.                                    :
------------------------------------------------------------------ x
**DORA L. IRIZARRY, United States District Judge:**

      U.S. Underwriters Insurance Company ("U.S. Underwriters") filed the instant action against defendants 101-19 37th Avenue LLC ("101-19 LLC"), United Founders Limited ("United"), Saal Management Corporation ("Saal"), Fereydoun Pouratian ("Pouratian"), Jose Montesdeoca, and Sonia Montesdeoca (collectively, "Defendants"), seeking a declaratory judgment that it has no obligation to defend or indemnify its insured, 101-19 LLC, with respect to the claims asserted against 101-19 LLC in the underlying action, *Victor & Sonia Montesdeoca v. 101-19 37th Avenue LLC, United Founders Ltd., Saal Mangement Corp., Fereydoun Pouratian, Alpha Builder Inc. & Lee Engineering P.C.*, filed in New York State Supreme Court, Queens County, Index No. 27647-11 ("Montesdeoca Action"). (*See* Complaint, Dkt. Entry No. 1.) U.S. Underwriters moves for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, on the ground that an exclusion in the policy between U.S. Underwriters and 101-19 LLC ("Policy") bars coverage for 101-19 LLC in the Montesdeoca Action. (*See* Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment ("Pl. Mem."), Dkt. Entry No. 21.) Defendants 101-19 LLC and Pouratian oppose U.S. Underwriters' motion.

1

(*See* 101-19 LLC & Pouratian's Memorandum of Law in Opposition ("Defs.' Opp'n"), Dkt. Entry No. 24.) For the reasons set forth below, U.S. Underwriters' motion is granted.

## BACKGROUND[1]

**I.     Parties**

U.S. Underwriters is a Pennsylvania corporation with its principal place of business located in Wayne, Pennsylvania. (Plaintiff's 56.1 Statement of Facts ("Pl.'s 56.1"), Dkt. Entry No. 20 ¶2.) 101-19 LLC is a New York corporation with its principal place of business located in Port Washington, New York. (*Id*. ¶ 3.) 101-19 LLC is the owner of the premises located at 101-15 37th Avenue, Corona, New York 11368 (the "Premises"). (*Id*. ¶ 4.) At all times relevant to this action, Pouratian was a 25% shareholder in 101-19 LLC. (*Id*. ¶ 6; 101-19 LLC & Pouratian's 56.1 Counterstatement of Fact ("Defs.' 56.1"), Dkt. Entry No. 23 ¶6.) Pouratian owns United, which is a New York corporation with its principal place of business located in Great Neck, New York. (Pl.'s 56.1 ¶¶ 7-8.) Pouratian owns a 50% interest in Saal, which is a New York corporation with its principal place of business also located in Great Neck. (*Id*. ¶¶ 10-11.)

**II.    Terms in the Policy**

U.S. Underwriters issued the Policy to 101-19 LLC, for the period October 24, 2011 through January 24, 2012, which provided commercial general liability coverage. (*Id*. ¶ 20.) Notably, the Policy contained certain exclusions. It is the "Bodily Injury Exclusion – All Employees, Volunteer Workers, Temporary Workers, Casual Laborers, Contractors, and Subcontractors" ("Bodily Injury Exclusion") that is at issue in this action. (*Id*. ¶ 21.) The Bodily Injury Exclusion states:

---

[1] Except where otherwise stated, the Background is taken from facts that are not genuinely in dispute.

**L-500 (1/06)**

**This Endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**BODILY INJURY EXCLUSION – ALL EMPLOYEES, VOLUNTEER WORKERS, TEMPORARY WORKERS, CASUAL LABORERS, CONTRACTORS, AND SUB-CONTRACTORS**

**I.** **Paragraph 2. Exclusions** subparagraph **e.** of **Section I - Coverages, Coverage A Bodily Injury and Property Damage Liability** is deleted in its entirety and replaced with the following:

    1. "Bodily Injury" to any "employee", "volunteer worker", temporary worker" or "casual laborer" arising out of or in the course of:

       (a) Employment by any insured; or

       (b) Performing duties related to the conduct of any insured's business;

    2. "Bodily Injury" to any contractor, subcontractor or any "employee", "volunteer worker", "temporary worker" or "casual laborer" of any contractor or subcontractor arising out of or in the course of the rendering or performing services of any kind or nature whatsoever by such contractor, subcontractor or "employee", "volunteer worker", "temporary worker" or "casual laborer" of such contractor or subcontractor for which any insured may become liable in any capacity; or

    3. Any obligation of any insured to indemnify or contribute with another because of damages arising out of such "bodily injury"; or

    4. "Bodily Injury" sustained by the spouse, child, parent, brother or sister of any "employee", "volunteer worker", "temporary worker" or "casual laborer" of any insured, or of a contractor, subcontractor or of any "employee", "volunteer

> worker", "temporary worker" or "casual laborer" of
> any contractor or subcontractor
>
> This exclusion applies to all claims and "suits" by any person or organization for damages because of such "bodily injury", including damages for care and loss of services and any claim under which any insured may be held liable under any Worker's Compensation law.
>
> "Casual laborer" means any person providing work or materials to any insured for compensation of any type.

(Pl.'s 56.1 ¶ 21.)

### III. Events Leading to the Montesdeoca Action

In December 2011, 101-19 LLC initiated construction activities of an unspecified nature at the Premises. (*Id.* ¶ 5.) United was the general contractor for the construction project at the Premises. (*Id.* ¶ 9.) The parties dispute whether Saal or a different entity purchased lumber from the Samuel Feldman Lumber Company Inc. ("Feldman Lumber") for this project. (*Compare* Pl.'s 56.1 ¶ 12 *with* Defs.' 56.1 ¶ 12.) However, Saal had purchased lumber from Feldman Lumber prior to December 2011. (Defs.' 56.1 ¶ 12.) Furthermore, there is an invoice, order ticket, and delivery ticket from early December from Feldman Lumber indicating that Feldman Lumber sold various items to "Saal Management Corp. Att[n]: Fred Pouratian" and that the items purchased, including sheetrock, were shipped to "101-15 37th Ave" with "Aqeel" listed as the onsite contact person. (Feldman Lumber Invoices, attached as Ex. K to the Declaration of Steven Verveniotis ("Verveniotis Decl."), Dkt. Entry No. 17.) "Aqeel" worked as a subcontractor for either 101-19 LLC or United (101-19 LLC's general contractor) at the Premises.[2] (Deposition of Fereydoun Pouratian ("Pouratian Depo. Tr."), attached as Exhibit M to the Verveniotis Decl., 21-22.) Furthermore, Derek Ward, the general manager at Feldman

---

[2] Defendants admit that "Aqeel" worked as a subcontractor for United but they appear to deny that he worked as a subcontractor for 101-19 LLC. (Defs.' 56.1 ¶ 33.) However, at his deposition, Pouratian testified that there was a contract between "Aqeel" and either 101-19 LLC or United. (Pouratian Decl. at 22-23.)

4

Lumber, confirmed that Jose Montesdoeca delivered sheetrock to the Premises and that the invoices, delivery ticket, and receipts were legitimate. (Deposition of Derek Ward ("Ward Depo. Tr."), attached as Exhibit J to the Verveniotis Decl., 17-22.)

None of the parties dispute that Pouratian called Feldman Lumber to order the sheetrock. (Defs.' 56.1 ¶ 37; Pl.'s 56.1 ¶ 37.) Pouratian asserts that, even though the receipts from Feldman Lumber state that Saal ordered the sheetrock, that statement was an error and that Pouratian ordered the sheetrock on behalf of United. (Pl.'s 56.1 ¶¶ 36-37.) Pouratian had an account with Feldman Lumber and paid for supplies he received on a monthly basis. (Pouratian Depo. Tr. at 33.) Pouratian stated that he paid for the supplies with United's credit card (*id.* at 37); however, none of the parties have provided evidence as to whether he paid for the supplies with United's credit card, a personal credit card or a credit card affiliated with one of the other entities in which Pouratian has an ownership interest. Thus, based on the evidence before the Court, either 101-19 LLC or its contractors, United, Saal or Aqeel paid for the sheetrock delivered by Feldman Lumber. (*Id.* at 32.)

On December 3, 2011, Mr. Montesdeoca was injured while delivering sheetrock to the construction project at the Premises. (Pl.'s 56.1 ¶¶ 13, 15; Defs.' 56.1 ¶ 15.) In particular, Mr. Montesdeoca was injured while transporting the sheetrock from one location to another at the Premises while driving a fork-lift truck. (Pl.'s 56.1 ¶ 23.) At the time of his injury, Mr. Montesdeoca had worked for Feldman Lumber as a driver for over a decade and had significant experience driving fork-lift trucks. (*Id.* at ¶¶ 26-27.) This injury prompted the filing of the Montesdeoca Action, in which Mr. Montesdeoca asserts personal injury claims against the defendants in that action, and his wife, Sonia Montesdeoca, asserts a claim for loss of

consortium.³ (Pl.'s 56.1 ¶¶ 16, 19.) Additionally, Mr. Montesdeoca filed an action seeking workers' compensation benefits. On February 7, 2013, the State of New York Workers' Compensation Board issued a decision awarding him workers' compensation benefits for the injuries he suffered at the Premises on December 3, 2011. (*Id.* ¶ 25.) The decision identifies Feldman Lumber as his employer. (*Id.*)

## IV. Notice of the Montesdeoca Action

On December 21, 2011, U.S. Underwriters received notice of the Montesdeoca accident. (Pl.'s 56.1 ¶ 42.) On December 29, 2011, U.S. Underwriters issued a disclaimer letter to its insured, 101-19 LLC, and copied that letter to United, Saal, and counsel for the Montesdeocas, denying coverage to all interested parties on the basis of the Policy's Bodily Injury Exclusion ("Disclaimer Letter"). (*Id.* ¶ 43.) The Disclaimer Letter quoted the entire text of the Bodily Injury Exclusion. (Disclaimer Letter, attached as Ex. D to the Affidavit of Carol Ann Myrtetus ("Myrtetus Aff."), Dkt. Entry No. 19.) The Disclaimer letter explained that "[a]s 'this loss' arises from '**bodily injury**' to a contractor or subcontractor or to an '**employee**' of a contractor or subcontractor, endorsement L500 (1/06), cited above, applies and excludes coverage for this loss." (*Id.* at 3.) The Disclaimer Letter also noted that:

> There may be other reasons for which coverage does not exist for this loss, and our failure to enumerate in this letter each and every potential ground for coverage denial does not mean that we have waived any of our rights. We reserve all of our rights under the policy.

(*Id.*)

---

³ As U.S. Underwriters' motion is predicated on proceedings in the courts of the State of New York, this Court takes judicial notice of public documents filed in connection with the Montesdeoca Action, "not for the truth of the matters asserted . . . but rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

In a letter dated February 16, 2012, 101-19 LLC's counsel objected to the Disclaimer Letter ("101-19 LLC's Objection"), contending that the Bodily Injury Exclusion did not preclude coverage as Mr. Montesdeoca was not an employee of a contractor or a subcontractor of 101-19 LLC. (101-19 LLC's Objection, attached as Ex. E to the Myrtetus Aff.) 101-19 LLC asserted that Feldman Lumber was a materials supplier for 101-19 LLC's contractor, and not itself a subcontractor, which meant that Mr. Montesdeoca did not work for a subcontractor and did not fall subject to the Bodily Injury Exclusion. (*Id*. at 2.) On February 17, 2012, U.S. Underwriters responded to 101-19 LLC's Objection ("Response"), asserting that the Bodily Injury Exclusion precluded coverage and noting that the Bodily Injury Exclusion "excludes coverage for injury to 'casual laborers', which the endorsement defines as . . . any person providing work or materials to any insured for compensation of any type." (Response, attached as Ex. F to the Myrtetus Aff.)

## V. Procedural History

On June 19, 2012, U.S. Underwriters commenced the instant action, seeking a declaration that it has "no obligation to defend or indemnify 101-19 LLC or any other party, as to any and all claims, actions, and lawsuits arising out of or pertaining to the relevant incident, including the [Montesdeoca Action]." (Compl. ¶ 20.) On July 10, 2012, 101-19 LLC filed an answer and asserted counter-claims. (Answer, Dkt. Entry No. 3.) The parties have completed discovery. Presently before the Court is U.S. Underwriters' motion for summary judgment.

## DECLARATORY JUDGMENT

Courts have no statutory obligation to entertain actions seeking declaratory relief. Instead, courts "*may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 278 (1995) (noting that the Declaratory Judgment Act is "an enabling Act, which confers a

discretion on the courts rather than an absolute right upon the litigant" (quotation omitted)). Courts should entertain actions seeking declaratory relief if: (1) "the judgment will serve a useful purpose in clarifying and settling the legal relations in issue," or (2) "[the judgment] will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Broadview Chem. Corp. v. Loctite Corp.*, 417 F. 2d 998, 1001 (2d Cir. 1969). In certain instances, courts should decline to exercise their declaratory jurisdiction. Indeed, "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in the state court, a district court might be indulging in a gratuitous interference if it permitted the federal declaratory action to proceed." *Nat'l Union Fire Ins. Co. v. Karp*, 108 F. 3d 17, 22 (2d Cir. 1997) (quotation omitted).

U.S. Underwriters commenced this action seeking declaratory relief from a federal court after the commencement of the Montesdeoca Action in state court. The Court proceeds cautiously into resolution of such disputes; however, the Court is satisfied that the instant action for declaratory relief is properly before it. U.S. Underwriters is not a party to the Montesdeoca Action and, therefore, cannot litigate its duties to defend and to indemnify 101-19 LLC in the Montesdeoca Action. The Court's resolution of this action will clarify U.S. Underwriters' otherwise uncertain obligations in the Montesdeoca Action. *See U.S. Underwriters Ins. Co. v. Kum Gan Inc., et. al.*, 443 F. Supp. 2d 348, 354-56 (E.D.N.Y. 2006) (granting declaratory relief to two insurers to clarify their rights in an underlying state court action to which they were not parties).

## SUMMARY JUDGMENT

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F. 3d 184, 202 (2d Cir. 2007) (internal quotations omitted). A fact is "material" within the meaning of Rule 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. To determine whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F. 3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam) and *Ramseur v. Chase Manhattan Bank*, 865 F. 2d 460, 465 (2d Cir. 1989)). "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The moving party bears the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrates the absence of a genuine issue of fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted). The nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in [its] favor." *Anderson*, 477 U.S. at 256. The nonmoving party may not "rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the nonmoving party's pleading." *Ying Jing Gan v. City of New York*, 996 F. 2d 522, 532-33 (2d Cir. 1993) (citations and internal quotations omitted). "Summary judgment is appropriate only '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F. 3d 134, 141 (2d Cir. 2012) (quoting *Matsushita*, 475 U.S. at 587).

# DISCUSSION

**I. Coverage**

The parties agree that New York law governs this dispute. "Under New York law, an insurer's duty to indemnify arises under the insurance contract." *Transportation Ins. Co. v. AARK Constr. Group, Ltd.*, 526 F. Supp. 2d 350, 356 (E.D.N.Y. 2007). The duty to defend is broad, and extends beyond the duty to indemnify. *See Northville Indus. Corp. v. Nat'l Union Fire Ins. Co.*, 218 A.D.2d 19, 25 (2d Dep't 1995). The duty to defend "arises whenever the allegations in the complaint fall within the risk covered by the policy." *Ruder & Finn v. Seaboard Sur. Co.*, 52 N.Y.2d 663, 669 (1981). "When determining whether an insurer has a duty to defend a particular action, the court focuses on the allegations of the underlying complaint." *Atlantic Cas. Ins. Co. v. W. Park Assocs., Inc.*, 585 F. Supp. 2d 323, 325 (E.D.N.Y. 2008) (explaining that "[i]f claims asserted in the underlying action can be said to 'rationally' fall within coverage of the policy at issue, there is an obligation to defend").

"Despite the breadth of these duties, courts must nevertheless give unambiguous provisions of insurance contracts their plain and ordinary meaning 'refraining from rewriting an agreement.'" *Nautilus Ins. Co. v. Barfield Realty Corp.*, 2012 WL 4889280, at *4 (E.D.N.Y. Oct. 16, 2012) (quoting *U.S. Fid. & Guar. Co. v. Annuziata*, 67 N.Y.2d 229, 232 (1986)); *see also Parks Real Estate Purchasing Group v. St. Paul Fire & Marine Ins. Co.*, 472 F. 3d 33, 42 (explaining that "[w]hen the provisions are unambiguous and understandable, courts are to enforce them as written"). A finding as to whether a provision is ambiguous is a "threshold question of law to be determined by the court." *Parks Real Estate*, 472 F. 3d at 42 (quoting *Duane Reade Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F. 3d 384, 390 (2d Cir. 2005)). To negate coverage by virtue of an exclusion contained within a policy, "an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." *Cont. Cas. Co. v. Rapid-Am. Corp.*, 80 N.Y.2d 640, 652 (1993). When the meaning of a particular provision is in doubt, or subject to more than one reasonable interpretation, "all ambiguity must be resolved in favor of the policy holder and against the company which issued the policy." *Kimmins Indus. Serv. v. Reliance Ins. Co.*, 19 F. 3d 78, 81 (2d Cir. 1994).

Under New York law, "an insurer bears the burden of proving that an exclusion applies." *Ment Bros. Iron Works Co. Inc. v. Interstate Fire & Cas. Co.*, 702 F. 3d 118, 121 (2d Cir. 2012) (citing *Consol. Edison Co. of N.Y. v. Allstate Ins. Co.*, 98 N.Y.2d 208, 218 (2002)). "Once the insurer establishes that an exclusion applies, however, New York law has evolved to place the burden of proof on the insured to establish the applicability of an *exception to the exclusion.*" *Ment Bros.*, 702 F. 3d at 121 (explaining the parties' shifting burdens of proof in an insurance coverage dispute).

Turning to the instant action, U.S. Underwriters contends that the Bodily Injury Exclusion bars coverage of the duties to defend and indemnify 101-19 LLC in the Montesdeoca Action as Mr. Montesdeoca was an employee of a contractor or subcontractor performing services on behalf of the insured, 101-19 LLC. (Pl.'s Mem. at 2-14.) 101-19 LLC contends that the Bodily Injury Exclusion does not bar coverage for 101-19 LLC in the Montesdeoca Action because Feldman Lumber, which employed Mr. Montesdeoca, operated as a "supplier" or "materialman" for the work performed at the Premises. 101-19 LLC concedes that the Bodily Injury Exclusion bars coverage for injuries sustained by employees of contractors and subcontractors, but notes that the Bodily Injury Exclusion is silent as to injuries sustained by employees of suppliers or materialmen, and the Court should construe that silence against U.S. Underwriters. (Def.'s Opp'n at 5-12.)

Under the language of the Policy, U.S. Underwriters has excluded coverage for:

> "Bodily Injury" to any contractor, subcontractor or any "employee", "volunteer worker", "temporary worker" or "casual laborer" of any contractor or subcontractor arising out of or in the course of the rendering or performing services of any kind or nature whatsoever by such contractor, subcontractor or "employee", "volunteer worker", "temporary worker" or "casual laborer" of such contractor or subcontractor for which any insured may become liable in any capacity . . . .

(Pl.'s 56.1 ¶ 21.) By its own terms, the Policy does not cover injury "arising out of or in the course of the rendering or performing services of any kind or nature whatsoever by" a contractor, subcontractor or employee, volunteer worker, temporary worker or casual laborer of a contractor or subcontractor. (*Id.*) The issues before this Court are whether (i) the exclusion is valid and enforceable, and (ii) the exclusion is applicable to 101-19 LLC's coverage for the Montesdeoca Action.

First, "[c]ourts in this circuit have interpreted the language of similar 'employee injury' and 'independent contractor' exclusions to be 'clear and unambiguous.'" *U.S. Underwriters Ins. Co. v. Congregation Kollel Tisereth, Tzvi*, 2004 WL 2191051, at *5 (E.D.N.Y. Sept. 30, 2004) (collecting cases and concluding that an employee injury exclusion incorporated in a general commercial liability policy was unambiguous, valid, and enforceable); *see also Barfield Realty Corp.*, 2012 WL 4889280 at *6 (holding that a similar exclusion was enforceable to bar coverage for an insured in an underlying personal injury action). Thus, as a matter of law, the Bodily Injury Exclusion is enforceable because it is as equally clear and unambiguous as the provisions at issue in other cases.

Second, the Bodily Injury Exclusion bars coverage of the Montesdeoca Action. Courts have barred coverage under similar circumstances. *See Barfield Realty Corp.*, 2012 WL 4889280 at *4-7 (holding that an exclusion barred coverage for the injuries sustained by an employee of a contractor performing renovations at a building owned by the insured); *Colon v. U.S. Liability Ins. Group*, 2009 WL 2413646, at *3-4 (E.D.N.Y. Aug. 6, 2009) (holding that coverage was precluded by the "express terms" of a similar exclusion as the injured individual was "either an employee of the insured or an employee of an independent contractor retained by the insured"); *Kollel Tisereth*, 2004 WL 2191051 at 4-7 (holding that an individual who worked regularly for a "self-employed" subcontractor who was injured while performing work on behalf of the insured at a location owned by the insured fell within the bodily injury exclusion at issue).

Mr. Montesdeoca was injured at the Premises when he was transporting sheetrock via a fork-lift truck from one location to another at the Premises at the behest of the insured, 101-19 LLC, or its general contractor, United, or its procurement subcontractor, Saal, or its other admitted subcontractor, "Aqeel." Although Mr. Montesdeoca worked for Feldman Lumber, he

would not have been injured but for the order for sheet rock placed by either 101-19 LLC, United, Saal or "Aqeel." Notably, another judge in this District has ruled that an exclusion to a general commercial liability policy barred coverage under these same circumstances. *See Atlantic Cas. Ins. Co. v. W. Park Assocs., Inc.*, 585 F. Supp. 2d 323, 325-27 (E.D.N.Y. 2008) (holding that an employee of a supplier who was injured while delivering sheet rock as requested by a drywall subcontractor on behalf of a contractor fell within an exclusion barring coverage for injuries "arising out of the actions of independent contractors/subcontractors for or on behalf of any insured" as the employee would not have been injured but for the subcontractor hiring the supplier to provide sheet rock). Accordingly, the Court concludes that the Bodily Injury Exclusion bars coverage of the Montesdeoca Action.

## II.     Notice of Disclaimer

101-19 LLC contends that U.S. Underwriters should be prohibited from relying on the "casual laborer" exclusion to bar coverage of the Montesdeoca Action, as U.S. Underwriters failed to provide a timely disclaimer notice of its intent to rely on this provision. (Defs.' Opp'n at 13-17.) It is unnecessary to address whether U.S. Underwriters provided timely notice of its intent to disclaim coverage under the "casual laborer" provision as the Court has concluded that the Bodily Injury Exclusion bars coverage of the Montesdeoca Action. Accordingly, nothing in this Opinion should be construed as a decision on the merits of this issue.

## CONCLUSION

For the reasons set forth above, U.S. Underwriters' motion for summary judgment is granted. This Court declares that U.S. Underwriters has no duty to defend or indemnify its insured, 101-19 LLC, with respect to the claims asserted against 101-19 LLC in the underlying Montesdeoca Action. The Defendants' counterclaims are dismissed with prejudice.

SO ORDERED.

Dated: Brooklyn, New York
       March 27, 2014

/s/
DORA L. IRIZARRY
United States District Judge